We are now recording. Hear ye, hear ye, this Honorable Appellate Court for the Second Judicial District is now open. The Honorable Mary S. Szostak presiding. Your Honors, the first case on the docket this morning is 2-22-0012, Enrabius State of Grace Munoz, a disabled adult, Alex G. Munoz, Petitioner Appellant, the Elena Munoz Unruh, Respondent Appellee. Arguing for the Appellant, Mr. Michael H. Wendt. Arguing for the Appellee, Mr. Scott D. Becker. Mr. Wendt, are you ready to proceed? Yes, Your Honors, I am. Okay, you may proceed. Good morning, Your Honors. Michael Wendt on behalf of the Appellant-slash-Plaintiff, and may it please the Court, one of the primary purposes of our legal system is to protect those who do not have a voice. In this case, a disabled person is viewed as a favored person in the eyes of law and is titled to the most vigilant protection. The ward, Grace Munoz, is mentally incapacitated with Alzheimer's. She's confined to her bed, cannot communicate within a single room of her 8,000-square-foot mansion, a mansion that is very expensive to maintain with a swimming pool. And while she may no longer be able to communicate with us, we know of her intent through her estate plan. However, defendants seek to extinguish her voice and substitute theirs in her place. Your Honors, I believe a good way of understanding numerous issues and orders within this case is to take a look at the timeline. If we look at the timeline between these orders, we see how these orders are interconnected. Let me interrupt you, Mr. Wendt, and just ask you this question. You started off with, I would assume, the issue that Mr. Alex, if you will, wanted to move his wife out of the home and into a facility. That was granted and then it was, on a motion to reconsider, I think it was reversed, correct? No, Your Honor, it was not granted. Okay, but at one point the court said Grace shall not be moved at this time, correct? That's correct, Your Honor. How is that a final unappealable order? It was not final at the time it was made because it contained interlocutory language. However, with the other series of orders that arose after it and its interconnectivity, it became final after the judge denied the motion to reconsider. And that was about nine months subsequent to that order. But even if he denied the motion to reconsider, doesn't his wording imply that this issue will be revisited? The wording implied at the time the order was made. However, at the hearing on July 14, the court clarified his intent, the court clarified his intent on the record by stating that the purpose behind the order was to give the ward a place to live. So it was not, so that additional clarification is really cutting against the interlocutoriness of the order. And because we want to get this issue resolved, that's why we brought the motion to reconsider. I mean, interlocutory language, even language in order that's interlocutory after a while certainly can become final. The question is, how long is our client supposed to wait before the order is considered to be final? Nine months or years? Well, that's a question. Did you give us the transcript of that hearing, by the way? Yes, we did include excerpts of that hearing. It is attached in the appendix, Your Honor. So you're saying that in every case a motion to reconsider then makes a ruling that may be otherwise interlocutory final? No, not in every case, Your Honor. In this case, based on the facts and circumstances and the time period and the interconnectivity between that orders, all those factors combined together make that final. Thank you. So to go back to my earlier point, we wouldn't be here today if it were not for our petition for instructions to move the ward, which was filed back in January 2021. Mr. Wendt, you argue that Alex and Grace transferred their assets as gifts from Merrill Estate into these trusts as separate property of which Grace is the beneficiary. But doesn't the language of the trust state that the purpose was to avoid probate to the extent able to provide income to Grace, then Alex, and then the couple, six children? Doesn't that conflict with your argument? No, it does not conflict with the argument because a separate trust is a basic method of estate planning. And the trust language itself, if you look at the trust documents, state that Grace Munoz has transferred the property into her name and now transfers it into trust. Does it use the term gift at all? Does not use the word gift, but gift can be implied based on the circumstances and conduct between the parties. So, I mean, although the intent to avoid probate was part of the motivation, as well as gaining a estate tax advantage, the method of doing it was still to separate their assets and gift the asset from jointly from the Merrill Estate to Grace Munoz individually to hold a separate property. That was the method that was used. And Illinois case law makes clear that transmutation is a two-way street. While separate property can become marital, the reverse is true where marital can become separate. Or it can remain marital. It can remain marital, yes, but what is required in the analysis is really to look at the facts and circumstances of the case. And based on how the language of the estate plan, how she transfers it, how she is the only beneficiary of the estate plan and our client and the children are secondary and tertiary beneficiaries upon her death, really evidences intent to treat this as separate property. Now, since after the petition for instruction was filed on March 23rd, 2021, the court ordered that Grace was not to be moved without court approval. And the problem with that order is that it really does interfere with Mr. Munoz's duties and powers as trustee. And whether the judge intended or not, at least whether the judge consciously intended or not, it does have the effect of modifying a trust, which under statutory law can only be done if it furthers the purpose of the trust or it is impractical or wasteful of trust administration, meaning trust assets are being wasted. Well, the court did eventually revoke his power of attorney, correct? Yes, but the reason why, but there was no reason given the court order for the revocation of power of is that even defendants and their guardianship reports back in 2019 and as late as November 2020 stated that Mr. Munoz did an excellent job of caring for his wife. You state, you argue that there's no, there was no reason for the court to enter that order revoking his power of attorney. The order did not give a reason. But you haven't, well, the order, uh, what you don't have is a transcript of the hearing where the children testified, correct? That is correct, your honor. And don't we have to presume that the trial court's order was consistent with the law? Uh, that is true, your honor, except that at a subsequent proceeding on July 14, um, the court stated that the purpose really of these orders was to give her a place to stay. It was always contemplated that there may be a day when Grace needs to be moved, correct? Article one of the third restatement of Grace's living trust, there was, it was always contemplated that she might be moved. It's provides for convalescent care, extended care or a nursing home. Yes. Uh, there, there, there, the parties were planning for their final years, for their building years, your honor. And so they understood that eventually a person's health may deteriorate deteriorate and that. What about Grace's wish to die in the home, if at all possible, that was her wish, according to, uh, the arguments that were made below, correct? Well, that is what the defendant claims. However, the board has been incapacitated for the last 10 years. So we can't exactly, we don't really know where her intent is since she can no longer communicate with us. They all, the best way of gauging her intent is really to look at her estate plan, which really invests, shows her trust to her husband, uh, Mr. Munoz to do the best job of caring for his wife. And in the petition to, in the petition to vacate, doesn't it state that the children's understanding was that their mother wanted to remain in the home until her death? Your honors, uh, that is a disputed fact between the parties. Well, again, there's no transcript. We have, we have a copy of the petition, but we don't have the transcript from the hearing whose burden is it to provide the court with the necessary support. Your honors, we believe that the facts and circumstances of this case, including the close proximity between the March and April order, as well as the court statements in July, clarify the intent behind the order in April, determining the power of attorney for healthcare. Uh, although there is no transcripts, we believe that the interconnectivity between these issues, plus the court's subsequent clarification of its intent clarifies the reason behind the order, which is not because, you know, power of attorney for healthcare wasn't terminated because she was incapacitated or because, um, based on defense allegations, but it's really just because the judge had a gut feeling that he really wanted to remain in the or justice Jorgensen have any questions concerning, um, that revocation let's talk about, just because I'm watching your time, Mr. Went, let's talk about Adolf and, um, the, the attempts to remove him as a trustee. Yes, your honor. Uh, so we filed a, because we were not able to a couple of reasons first, because we are not able to liquidate, um, the mansion to free up funds to care for grace. And also because the irrevocable trust, uh, which was created back in 2006 was no longer providing income. Um, the trustee as Muniz, the defendant, uh, was had a fiduciary duty to provide income, but he sold the cell tower leases that were providing that income and distributions fell from roughly a hundred thousand dollars to about $47,000 in 2019 and, uh, 9,020. So we believe that this shows gross mismanagement of the trust and that the court abuses discretion by not allowing us to move forward in this issue and at least take an evidentiary hearing to get to the bottom of this. And, um, for these reasons, for the reasons laid out, if I may conclude your honors, my, um, uh, for the reasons laid out in our briefs, um, just time and time again, the court has committed at least legal errors, uh, which is reviewable de novo. And also because we know of grace's intent from her estate plan, how she trusts her husband. I ask that you vacate these orders and restore, uh, the ward's voice to her and that we honor her estate plan. Thank you. Do you think her trust in her husband would have changed or had changed when he had his girlfriend living in the home with her? Well, again, we don't know what her intent is because she can no longer communicate with us. So, so you said her intent at the time was that she trusted her husband in making these decisions. Do you think her trust would have changed? Well, that, well, we don't know that any thoughts about that are expectative, but we do know is that he has been caring for her for the last 10 years. He has been providing her with top-notch care and he has done everything he can as her husband, despite the fact that he may have had a affair with her caretaker about 10 years ago to do what is best for her. And the reason why he brought the petition for instruction to move her was to continue to provide the best care for her by liquidating a trust asset and using those funds to pay for healthcare. Thank you. One other question. You talked about a hearing. There should have been a hearing. Were there ever any hearings in this between the judge and the parties? It was more of the last, it was really just arguments between the parties, your honor. And, you know, the transcript that we have of the July 14th hearing, and also there's one on August 14th regarding the irrevocable trust. Those are really just arguments taken between counsel rather than bringing the witnesses and developing these issues. Any questions, Justice Burkett? Just briefly, there were six witnesses that testified, weren't there, on April 13th when the trial court revoked the power of attorney? I believe so, your honor. So we don't have that transcript? No, your honor. Okay. Thank you. That's all. Okay. Thank you, your honor. No further questions. Your time is up. You will have an opportunity to ask questions. For rebuttal after Mr. Becker makes his argument. Mr. Becker, are you ready to proceed, sir? I am. You may proceed. Good morning, your honors. Thank you. So I think I would like to start with the March 23rd order in which the court had stated that Grace should not be removed or should not be moved from her home. In fact, in 2011, the plaintiff agreed to this in an order that she would not be moved from her home. In 2014, without notice to any party, he was able to obtain an order for her to be moved from her home. But that's the petition to vacate that Judge Burkett referenced earlier. That petition vacated the order that he obtained without any notice. There was a hearing held, and there were witnesses that testified at that hearing. And they did testify that that was what Grace's intent was when they built this home in the capacity and with the arrangements that it has, it was for her place to live out the remainder of her life and her husband to remain for the remainder of his life, if he so chose. At that time, after a hearing, the court decided, no, she should not be removed from her home until further order of court. Again, in 2017, the court made the same decision that she should not be moved from her home until further order of court. When does that, when does the time run out? I mean, Grace has been in In-Village for more than a decade, correct? Correct. Well, her guardian ad litem, I'm sorry, go ahead. No, and the trust, article one of the trust does say that trust contemplates convalescent care, extended care for a nursing home. In other words, end of life care. And your position must be that she's just not at that stage yet. No, it's not that she's not at that stage, but it is that her wish was to remain in her home and die in her home. Why isn't that the language of the trust? I can't tell you that. I was not involved in 2003 or in implementing those trusts. I can only tell you that that's what her adult children testified to at the 2014 hearing, that that was their parents' intention in building this so-called mansion, which I don't agree with that in bathroom. It has a facility right next door for her living caretakers to stay. So they're right close to her room. The driveway, the sidewalks, they have radiant heat so that they didn't ice over. There's an elevator shaft in this property so that if in the future they needed to put an elevator in, they could. I mean, they planned for this exact scenario. They have the funds to pay for her care in that home, and they always have. And that's part of the purpose of that irrevocable trust that Adolph is managing, is to ensure that there's funds to maintain Grace's needs, and then eventually his father Alex's needs as well, and then his sister who's disabled her needs. So they did have extensive funds and did this planning. So what I don't understand is the argument that the court has now somehow modified the trust when by agreement the plaintiff agreed she wouldn't be moved without court order back in 2011. In 2014, the court made the same order, same in 17, but now all of a sudden somehow this order is different from the rest, and they only rely on the interlocutory language, as he claims, that it won't happen at this time. She won't be moved at this time. Well, the other order is that once he filed a motion to reconsider, that language no longer became interlocutory. What's your response to that? Well, I believe the motion to reconsider should not have reconsidered this order. I believe it was not timely. This order became final 30 days from March 23rd when it was entered, and the motion to reconsider should not have even considered it. And that was in my response to the motion to reconsider it anyway and still denied that motion. With respect to... So I believe this order, as well as the April order in which the power of attorney was revoked, those orders were final. At the time those orders were implemented. So he had 30 days from the date of those orders to appeal? That's correct. Appeal or file his motion to reconsider within 30 days. And that was not done in either of those events. And to suggest that the April order especially is not final, in a guardianship case, what are we determining? We're determining whether the ward is disabled. That was determined back in 2011. And we're determining who's going to make her decisions, who's going to care for her. And when you appoint a new guardian and you revoke somebody's authority to act on her behalf, there's nothing more final in a guardianship case than that. So certainly that order was final in April and must have been motioned to be reconsidered within 30 days or appealed within 30 days. It didn't happen. A court can revoke a power of attorney, correct? That's correct. But did the court find that he lacked capacity or he was not acting in the benefit of her when he did revoke that? Yes, he did find that he was not acting in her best interest. Unfortunately, that transcript of that hearing has not been provided. No bystanders report has been offered. Same with that March 23rd. Pardon? Whose burden is that? That burden belongs to the plaintiff here. And when that is not upheld, then it's presumed that Judge Grady acted within the law and considered all the facts and evidence available. Let's move on, if you don't mind, to the termination, the motion to terminate the irrevocable trust, Adolph's position. And was he violating his fiduciary duties when he reallocated or changed the purpose or the core of this trust, if you will? Certainly not. And in fact, it was misstated what he did. He didn't sell cell tower leases. He sold the property. He sold the property on which the cell tower leases were located. So long before Adolph got involved with this property, his parents owned it. His parents set it up as a storage yard where people could park their semis or landscape vehicles for the day. They come in, they park their personal car there, they take these vehicles out and go do their landscaping business or their trucking, and then they bring them back. It was extremely lucrative. They put a couple cell towers on there as well to bring in more money. Turns out that that violates zoning law. And DuPage County was forcing them out. They cited my client, they cited all the neighboring property owners doing the same thing with being in violation of the zoning law. We considered trying to change that zoning. We watched one of the neighbors fail at that. We decided it wasn't worth the expense to spend on attorney fees to fail. So we found a buyer. We maximized the, my client found the buyer, maximized the amount of money that he could sell that property for and determined that he was going to do a 1031 tax deferred exchange so that he could reinvest the money without any income tax being taken out into other property that would be income producing. Could he have rolled that money back into the trust? It's still in the trust. I know, but liquidated, after he liquidated and just used the money, it put the money in the trust for the care of his mother. That would have been an option. We were in communication with his prior attorneys that were, Alex's prior attorneys that were we were doing and what was happening. My client felt that he could make a better return on his money and continue to have income producing property rather than just investing it in stocks or bonds and taking a risk of what the market might do. If he did that, he would have incurred a sizable tax event to the federal government because I believe that that property had been fully depreciated. He sold it for $2 million. We would have had a huge tax burden at that point, $400,000 roughly. He avoided that so he could reinvest so that now there is sufficient income. During that time, he had to evict all of the tenants. He didn't have any income coming in. He had to find new properties to reinvest in. He didn't have any income coming in until he so that was the reason for the dip in the income. Those properties are all producing. All the income is still being paid out for the benefit of grace to Alex Sr. at this time. It's starting to be restored back up to the levels that it was before the sale. The appellant makes much of the fees that Adolph was taking during the time that the trust was not really making sufficient funds to care for grace. I know what your response is going to be as was in your briefs. He was permitted by the trust to take those fees for his services. However, is it that appeared to be or is it a breach of his fiduciary duty as trustee in taking funds that were in excess of what the trust was even making? I don't believe it's a breach of his fiduciary duty. I can see how that the plaintiff would take offense to that. However, he just wants us to put Itasca Bank and Trust in there, which is the backup trustee. They certainly would have charged these fees. Nobody would even be questioning it. The amount of time and effort that was spent to sell a property, evict all those tenants, find replacement properties, and purchase those to avoid the estate tax was considerable. I think the fees that were charged were very reasonable. And while there was little income at that time, my client was always aware and under that trust, he has the duty to consider the other assets available to his mother for her care. He was always aware that there were other assets available. In fact, Alex Sr. always had access to her IRA. He had access to her Social Security income. Yes, the amounts of the income were down from prior years, but the income was still there. And the potential for future income was always being seen. And that's where the fees come in because he was helping to avoid the $400,000 bill and further legal proceedings from DuPage County for having a property that was not in compliance with zoning laws. He didn't choose that. He was given that hand and that he had to play it out how it was dealt. Thank you. Any questions? Any further questions regarding that issue, Justice Burkett? No. You can continue, Mr. Becker. Okay. And this issue of joint assets versus separate assets, I think it's very important for the court to consider the entire record, which is why I included that in my statement of facts and in the supplemental appendix. At the beginning of this case in 2011, there was an investigation done into whether there was any financial impropriety at that time. Nothing's been done since that time. But at that time, it was determined there was no financial impropriety. In which Alex Senior said, hey, yes, we have this complex estate plan, but we use all of these assets as our joint assets. They're our joint assets, this irrevocable trust that Adolph is in charge of. Alex Senior says, I use that money to support Grace, to support myself, to support my daughter, Rebecca, to pay all of our bills. We live off that. It's always our intention to treat this jointly. He told that in an in-camera interview. He put that in pleadings that are verified that he signed under oath. The plaintiff's own response to that now is, well, that was a prior attorney making that allegation. No, it was the plaintiff making that allegation. This is how we use those funds. They are joint funds. And now, years later, he's going to try to make the argument that they're separate funds. After having used the benefit of those funds back when it was convenient for him and Rebecca, but now does not see it so convenient because he must have alternative plans with respect to these funds. And so now he wants to treat them as separate so that he can get at the trust and the principle of that trust. The trust that is thriving, that Adolph has protected so that there are funds to guarantee his mother continues to be cared for, can continue to live in the home where she's always wanted to live. So I don't believe there's any need for showing of need when these are joint assets and they're not separate property by the admission of the plaintiff himself. So I believe that with all of what's been laid out here, the lower court has not abused his discretion. We don't have any transcript of the order from March 23rd and the hearing there. We don't have anything from April. These were the plaintiff's burdens to provide. The orders in May and July, again, were not timely appeal and were not timely motioned up to be reconsidered. So I don't believe any of those are properly before this court for consideration. The only one that is, is whether or not the irrevocable trust should be revoked, liquidated, or otherwise modified. And there's certainly no showing of any impropriety by Adolph. The only issue is whether he took too much in fees and revoking would be too serious of a response from the court to do that. They could have ordered him to pay the money back if the court felt that he took too much in fees. They didn't do that. So we would ask the court to uphold the lower court's orders. Isn't the issue of whether the assets are separate or marital a question of fact that needed to be addressed in an evidentiary hearing? Neither party requested an evidentiary hearing regarding that issue. Well, I believe there was already admission by the plaintiff that they were joint assets in the prior history of this case in the prior pleadings by the plaintiff. So yes, nobody requested an evidentiary hearing at this time, but I don't see that it is arbitrary or fanciful or unreasonable for judge Grady to have decided the plaintiff's already admitted these are joint assets in the prior prior pleadings he's filed and the in-camera interview. And those pleadings are judicial admissions that he cannot walk away from, correct? That's correct. Any further questions for Mr. Becker? Mr. Becker, thank you so much for your time. Thank you. Mr. Wendt, your opportunity for rebuttal. You're muted, sir. Thank you, Your Honor. Your Honors, if I may emphasize, the court should not allow this dispute between family members who may personally don't like each other to interfere with the best interest of the ward, Grace Munoz. The court, what we're really asking the court to do today is apply the law, both statutory law and the case law we've cited in our briefs, and allow the process to continue. And if we allow the legal process to continue and play itself out, this is designed to give the greatest degree of protection for Grace Munoz. Now, they may- Let me ask you a question, sir. On the petition to terminate the irrevocable trust, the one that Alex, or Adolph was the trustee in, and on the issue of whether Alex should be an evidentiary hearing, or did you ever request an evidentiary hearing? An evidentiary hearing, we never had an evidentiary hearing on those issues. These were arguments between counsel. Counsel for the plaintiff did raise the fact that, you know, if we really want to play this out, we do need an evidentiary hearing. But unfortunately, after that discussion was had, and that discussion was on the record, the judge, I mean, the court, the trial court did rule that against our client on the issue of spousal support and attorney's fees and the irrevocable trust. So we never really had the opportunity to develop the record the way that we wanted to. Did you ever request an evidentiary hearing? No, Your Honor, we did not. You can continue. But the discussion that we should have, one was on the record before the judge, but it just never proceeded that way, if I may. We didn't necessarily file a formal motion asking for an evidentiary hearing, but that discussion was held on the record in front of the judge. And instead of continuing the matter and asking for witnesses to come in, the court ruled against us in its orders, if I may clarify the record. Now, when it comes to jurisdiction, we did request 304A language to be included in our which means that our recourse to file this appeal was under 304B, which allows appeals to be filed for administration of a state, even if it doesn't dispose of the entire case. And the basis, again, for these appeals is that these orders, which some of them had interlocutory language, some of them may not have had that interlocutory language, but were later clarified on the record by the judge, really did not become final until the denial of the motion to reconsider. Based on the defendant's theory of jurisdiction, we would have needed to file an appeal on every order, every single month, resulting in multiple appeals within a five-month time frame. I mean, that really would not be a efficient way. That would not be a very efficient way of resolving this matter. It would be better to address all these issues at once. Did you file your motion within 30 days after the motion to reconsider? Or your appeal, excuse me. Yes. Yes, there are. Any further questions? I'm sorry, Mr. Wynne. Did I cut you off? Are you still going? I was still going, Your Honor. Okay, I'm sorry. Go right ahead, sir. The statement from counsel that Grace wishes to remain in her home is not a established fact at record. At best, it is a disputed fact, based strictly on the opinion of the defendants. Because we can't talk to Grace, the only thing we know is what happened to her. Her intent is reflected in her estate plan. Based on the law, that is where you look to when determining whether to follow the estate plan. It's really what the language of the estate plan allows. The language of the estate plan allows Alex Munoz to sell the home to free up care for her. Again, the defendant with the irrevocable trust matter states that Alex Munoz is entitled to management fees. We don't disagree that he's entitled to management fees. We're just concerned with the level of management fees. The fact that the defendant paid himself double the amount of management fees of distributions is very concerning. At the very least, this issue needed to be developed, and it was never developed at the trial level, although we'd like to. I see your time is up, Mr. Wendt. Do you want to wrap up real quickly? Yes, Your Honor. To conclude this case, this case is really about protecting the ward's voice. She trusted her husband to make the best decisions for her, so I ask the court to honor her wishes and reestablish her voice as stated in her estate plan. Thank you. Thank you, sir. Justice Burkett, Justice Jorgensen, any further questions? No, thank you. No further questions. Gentlemen, thank you very much for your very interesting arguments here today. They are very thought-provoking. We appreciate the time that you have given us. We will take this case under advisement and render a decision in due course. Thank you very much, and have a great day. Thank you, Your Honor. The court will be in recess until the next hearing.